**UNITED STATES of America**

v.

**Alan BROWN**

**No. CRIM.A03CR106LY.**

United States District Court,
W.D. Texas,
Austin Division.

Aug. 24, 2006.

John Pearson, U.S. Department of Justice, Washington, DC, for the Government.

Sue Ann Gregory, Asst. District Attorney, Bexar County Justice Center, San Antonio, TX, for Bexar County.

Michael W. McCrum, Attorney at Law, San Antonio, TX, for Defendant Alan Brown.

Charles L. Babcock, Jackson Walker, Dallas, TX, for Hearst Corporation.

## MEMORANDUM OPINION
## AND ORDER

YEAKEL, District Judge.

Before the Court are Bexar County Sheriff's Office Emergency Advisory to the Court Seeking Time to File a Motion for Protective Order and/or Motion to Stay the Lifting of the Seal filed August 2, 2005 (Doc. # 303); Bexar County Sheriff's Office's Memorandum in Support of Its Motion to Stay the Lifting of the Seal of the February 9, 2005 Closed Proceedings filed August 8, 2005 (Doc. # 305); the Hearst Corporation's Motion to Intervene filed August 9, 2005 (Doc. # 306); and the Hearst Corporation's Memorandum of Law in Support of Hearst Corporation's Motion to Intervene and Response and Memorandum of Law in Opposition to Bexar County Sheriff's Office's Motion to Stay the Lifting of the Seal of the February 9, 2005 Closed Proceedings filed August 9, 2005 (Doc. # 307). Also before the Court are correspondence from the Hearst Corporation dated February 25, 2005, and July 28, 2005.

On August 10, 2005, the Court conducted a hearing on the matter, at the conclusion of which the Court allowed the parties to submit any additional briefing. The Court received letter briefs from both the Bexar County Sheriff's Office and The Hearst Corporation on August 17, 2005.

Having reviewed the motions, correspondence, letter briefs, and considered the applicable law, arguments of counsel, and evidence presented at the hearing, the Court renders the following memorandum opinion and order.

### I. Factual Background

This matter pertains to the two-month criminal jury trial of Alan Brown. Brown was charged in a three-count indictment with conspiracy to evade federal income taxes and filing two false federal income tax returns. During trial, Brown's defense counsel repeatedly sought to introduce, for impeachment of prosecution witnesses, evidence related to an ongoing criminal investigation into a 1997 homicide. Concluding that the prejudicial effect of this evidence clearly outweighed any probative value, the Court repeatedly excluded this evidence. However, on February 9, 2005, the Court heard testimony regarding the collateral criminal investigation in a closed proceeding for the purposes of a bill of exceptions. Later that day, the jury found Brown not guilty of all charges, and the Court rendered its judgment of acquittal.

On February 25, 2005, the Court received correspondence from Jonathan R. Donnellan, Senior Counsel for The Hearst Corporation ("Hearst"), requesting that the Court unseal the transcript of the bill-of-exceptions hearing held on February 9, 2005. On March 1, 2005, this Court notified the parties that they could submit position statements regarding Donnellan's request. No party responded to the Court's notification.

On July 28, 2005, Hearst again requested that this Court unseal the transcript of the bill-of-exceptions hearing. Because the Court had not received any response from the parties, on August 2, 2005, the Court vacated its previous order sealing the transcript of the bill-of-exceptions hearing and ordered the transcript unsealed.

Later in the day on August 2, 2005, the Court received the Bexar County Sheriff's Office ("Sheriff's Office") advisory and motion. The Sheriff's Office requested that the Court stay its order unsealing the transcript because any release or disclosure of the information from the hearing would severely interfere, prejudice, and harm an ongoing homicide investigation. The Court stayed its order unsealing the transcript, and set the matter for an evi-

dentiary hearing. Hearst thereafter moved to intervene in the matter, opposing the Sheriff's Office motion to stay the lifting of the seal.

At the August 10, 2005 hearing, the Sheriff's Office and Hearst were represented by counsel, and an attorney for the Department of Justice appeared on behalf of the United States Government. Additionally, counsel appeared on behalf of Brown and the witnesses whose testimony is at issue in the bill-of-exceptions.[1] Detective Thomas Dorsa, an investigator with the Sheriff's Office, was the only witness to testify.

On examination by counsel for the Sheriff's Office, Dorsa explained that the criminal investigation discussed in the bill-of-exceptions transcript remained an ongoing homicide investigation, that three suspects were at large in Bexar County, and that one suspect was incarcerated outside Bexar County. Dorsa testified that it had been incredibly hard to bring witnesses forward in this investigation, in part, because the witnesses were afraid of talking about the case.[2] He testified that "after investigating these reasons that they have given me, I can understand why, I've substantiated their fears in these investiga-

tions." He further testified that, based on his personal experience and contacts with at least two of the suspects, he believed "100%" that the witnesses were afraid. Dorsa testified that when the seal was lifted for a brief time on August 2, 2005, one witness contacted him, and that the witnesses's fear was justified.

Additionally, Dorsa testified that if the information in the bill-of-exceptions transcript was disclosed, some evidence would be lost and some witnesses would no longer cooperate with the investigation, because they would not trust him. Dorsa stated that "[t]here's at least two other critical witnesses that I have right now that I know if information got out on this, I'd never see them again." On cross-examination, Dorsa testified that if the information in the transcript was disclosed, "this investigation is pretty much over."

Counsel for Brown and the witnesses whose testimony is at issue questioned Dorsa about whether there was a credible basis for the witnesses to be fearful. During this questioning, Dorsa, who has twenty-years experience in law enforcement, explained that the suspects were "very dangerous," and that their criminal histories indicated that they were dangerous

---

**1.** Although Hearst argued that the Sheriff's Office had no standing in this matter, the Court ruled at the August 10, 2005 hearing that both Hearst and the Sheriff's Office had a right to attend the hearing and to argue their positions regarding unsealing the transcript. Thus, to the extent that Hearst's motion could be construed as a motion to dismiss for lack of standing, the Court overruled the motion. Moreover, the witnesses whose testimony is at issue in the bill-of-exceptions transcripts most certainly have standing. No party has suggested that they do not. Although these witnesses have not formally submitted any documents pertaining to this matter, these witnesses were represented by counsel at the hearing. During the hearing, their counsel adopted the position of the Sheriff's Office and represented to the Court

that he would have called Detective Thomas Dorsa to testify if the Sheriff's Office had not done so. Further, counsel explained to the Court that his failure to respond to the Court's March 2005 request regarding unsealing the transcript was an oversight on his part. He represented to the Court that "the desire for the witnesses to keep their testimony sealed is every bit as much as it was the day that they testified. There has been no ease in their concern or their fear."

**2.** The Court notes that counsel for Hearst lodged hearsay objections to Dorsa's testimony regarding what the witnesses to the criminal investigation told him. The Court allowed the introduction of the statements for purposes of the hearing.

and violent. He testified that he thought the risk of retaliation against the witnesses actually was increased because one of the suspects was incarcerated. He testified that "[t]here's no doubt in my mind" that the witnesses would be placed in a very vulnerable position, including being killed, if their identities or the content of the information they divulged was unsealed. On further examination by counsel for Hearst, Dorsa acknowledged that he was not aware of any retaliation taken against the witnesses, and they were all still alive.

## II. Applicable Law

■ Although a presumption of openness inheres in the very nature of a criminal trial, the right of access under the First Amendment is not absolute. *See Globe Newspaper Co. v. Superior Court,* 457 U.S. 596, 606, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982); *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 573, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980). The right to openness in criminal proceedings may give way to other rights or interests, such as the government's interest in inhibiting disclosure of sensitive information. As the Supreme Court explained in *Globe:*

> the circumstances under which the press and public can be barred from a criminal trial are limited; the State's justification in denying access must be a weighty one. Where ... the State attempts to deny the right of access in order to inhibit the disclosure of sensitive information, it must be shown that the denial is necessitated by a compelling governmental interest, and is narrowly tailored to serve that interest.

*Globe,* 457 U.S. at 606–607, 102 S.Ct. 2613 (citations omitted).

■ Thus, for the presumption of openness in criminal proceedings to be overcome, "an overriding interest articulated in findings" must be shown. *Richmond Newspapers,* 448 U.S. at 581, 100 S.Ct. 2814. Such findings must demonstrate that "closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Press–Enterprise Co. v. Superior Court of Cal.,* 464 U.S. 501, 510, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984). The exact interest must "be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered." *Id.* at 510, 104 S.Ct. 819.

## III. Analysis

■ The Court concludes that the presumption of access has been sufficiently overcome to justify the transcript remaining sealed.[3] Based largely on Dorsa's testimony at the hearing, the Court concludes that the transcript should remain sealed because of two compelling governmental interests: (1) protection of an ongoing law-enforcement investigation; and (2) the safety of those cooperating with the ongoing law-enforcement investigation. The Court further concludes that the ongoing law-enforcement investigation and the safety of certain individuals are each interests of "higher values" than access to the transcript and that Dorsa's testimony establishes that a substantial probability exists that disclosure of the transcript will prejudice these interests.

Specifically, the Court finds that allowing access to the transcripts could thwart

**3.** The Sheriff's Office seems to suggest that the First Amendment presumption of access might not apply to a bill-of-exceptions hearing, or at least not to the one held in this case. The Court agrees with Hearst that bill-of-exceptions hearings are traditionally open to the public and are part of the criminal-trial process. The Court has, therefore, analyzed the issue as if the presumption of access applies to the bill-of-exceptions hearing.

the efforts of law enforcement to discover evidence to support its criminal investigation, as well as prejudice and substantially raise the risk of having additional evidence concealed or destroyed. Additionally, allowing access to the transcripts would substantially increase the risk of exposing witnesses to danger and retaliation from individuals implicated in the criminal investigation, a threat which the Court finds extremely credible in light of Dorsa's testimony.[4] Thus, sealing the transcript is a necessary means to achieve the compelling governmental interests.

The Court further concludes that sealing the bill-of-exceptions transcript is narrowly tailored to serve the compelling governmental interests. This is not a situation where any party has asked that the entire transcript from Brown's trial be sealed; rather, the request is only that the transcript of the bill-of-exceptions hearing be sealed. Nor is there any reasonable alternative to closure, such as redaction of the transcript, that would adequately protect the compelling governmental interests. For example, even if the witnesses's names were redacted, the nature of the information divulged could still lead to the identification of the witnesses. In addition, if the identity of a witness was already known, disclosing the transcript would reveal the extent to which the witness was willing to testify about his or her knowledge of the homicide under investigation, which could also place the witness in jeopardy. Redaction, therefore, is not a reasonable alternative, because the amount of redaction necessary to protect the witnesses would be tantamount to sealing the transcript.

For the foregoing reasons, the Court denies Hearst's request for access to the transcript. The Court, likewise, denies the Sheriff's Office request that the transcript be unsealed only as to it. The transcript of the bill-of-exceptions hearing held February 9, 2005, shall remain sealed for the time being.[5]

Lastly, the Court notes that it denied at the August 10, 2005 hearing Hearst's motion to intervene.[6] The Court recognizes Hearst's right to object and to protest the sealing of the transcript. Thus, the Court gave Hearst fair notice of the hearing on the matter, allowed Hearst an opportunity to be heard, and afforded Hearst the necessary First Amendment procedural safeguards. The Court does not see a need to allow Hearst to intervene in the underlying criminal case when the Court has afforded Hearst all the rights it would have if the Court had allowed Hearst to formally intervene. The Court denies Hearst's motion to intervene.

---

4. Even assuming that the objected-to hearsay statements from the witnesses did not fall within any applicable hearsay exception, the Court is persuaded that the danger to these witnesses is real without considering the statements. In particular, the Court notes Dorsa's testimony that "[t]here's no doubt in my mind" that the witnesses would be placed in a very vulnerable position, including being killed, if their identities or the content of the information they divulged was unsealed.

5. Although the Court is of the opinion that the bill-of-exceptions transcript should remain sealed for the present, the Court recognizes that it should not remain sealed indefinitely.

For example, should the information and identities that currently require confidentiality become public through other means, such as the grand-jury process or criminal trial of the homicide under investigation, the transcript should, most likely, be unsealed. At the other end of the spectrum, it is possible that a grand jury may never issue an indictment. In these types of instances, any party should feel free, upon proper motion, to petition the Court to unseal the transcript.

6. The Court had previously denied Hearst's earlier request to intervene in the action that was filed February 9, 2005.

## IV. Conclusion

**IT IS THEREFORE ORDERED** that the Bexar County Sheriff's Office Motion to Stay the Lifting of the Seal filed August 2, 2005 (Doc. # 303) is **GRANTED**.

**IT IS FURTHER ORDERED** that Bexar County Sheriff's request to unseal the bill-of-exceptions transcript only as to that agency is **DENIED**.

**IT IS FURTHER ORDERED** that the Hearst Corporation's Motion to Intervene (Doc. # 306) is **DENIED**.

**IT IS FINALLY ORDERED** that the transcript of the bill-of-exceptions hearing held in the above-entitled and numbered cause on February 9, 2005, shall remain **SEALED**.